UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNNY PUTRUS, No. 571738,

                Petitioner,                Case Number 5:12-cv-13260
                                                          Honorable John Corbett O'Meara

v.

WILLIE SMITH,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

This matter is before the Court on a petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner pled guilty in the Wayne Circuit Court to possession with intent to deliver methamphetamine or ecstasy, MICH. COMP. LAWS § 333.7401(2)(b)(i), possession with intent to deliver marijuana, MICH. COMP. LAWS § 333.7401(2)(d)(iii), and possession of a firearm during the commission of a felony ("felony firearm"), MICH. COMP. LAWS § 750.227b. Petitioner was sentenced to 7-to-20 years for the possession with intent to deliver methamphetamine or ecstasy conviction, 1-to-4 years for the marijuana conviction, and a consecutive two years for the felony firearm conviction. The petition raises four claims: (1) Petitioner's trial counsel was ineffective for failing to introduce evidence at a suppression hearing to show that he had standing to challenge the validity of the search of the house in which the narcotics were found; (2) the search of the house was illegal; (3) the trial court incorrectly scored the sentencing guideline variables; and (4) the trial court erroneously ruled that Petitioner's prior narcotics conviction would be admissible at trial. The Court finds that Petitioner's claims do not merit habeas relief. The Court will therefore deny the petition and deny Petitioner a certificate of appealability and permission to proceed on appeal in forma

pauperis.

## I. Facts and Procedural History

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> At the preliminary examination, police officers David Sanders, James McDonald, and Ronald Hopp testified that at 2:45 a.m. on August 25, 2006, they observed a man approaching a vacant house. Through an uncovered window, Officer McDonald saw defendant walking down a stairwell inside the house, but then, upon observing the police, run back upstairs, past a picture window on the second level, and toward the back of the house. Officer Sanders ran to the back of the house and saw defendant exit through a door on the second-floor balcony. Officer Sanders saw defendant stuff a large clear plastic bag underneath the roof overhang near the deck area and then go back inside. The bag was later recovered and contained 1,008 ecstasy pills packaged in 12 sandwich bags. After defendant went back inside the house, another man let Officer Hopp and his partner inside the house. Officer Hopp observed defendant coming from the kitchen area in the rear, upper level of the house. A semi-automatic handgun was found on a kitchen counter in the area where defendant had been, and marijuana packaged in small sandwich bags, clear vials, and a scale were found on a card table in the living room.

*People v. Putrus*, No. 280767, 2009 WL 609398, at *1-2, (Mich. Ct. App. Mar. 10, 2009).

Petitioner was arrested at the scene and charged with narcotics and firearm charges. Prior to trial, Petitioner filed a motion challenging the legality of the search of the house. An evidentiary hearing was held at which Petitioner's witnesses testified that they believed a man named Sam Warda owned the house in question. Petitioner testified that Warda gave him permission to use the house after the tenants had been evicted. Several witnesses testified that they had been with Petitioner in the home before, and that Petitioner had a key. The prosecutor presented evidence that the house was not furnished nor was it being lived in at the time of the search. The trial court ruled that Petitioner had not presented sufficient evidence to demonstrate that he had permission to use

the house and had no reasonable expectation of privacy while he was there.

At another pretrial hearing, the trial court ruled that Petitioner's prior narcotics conviction would be admissible at trial under Michigan Rule of Evidence 404(b).

Thereafter, Petitioner entered a conditional guilty plea, allowing him to appeal Rule 404(b) claim, and he was sentencing as indicated above.

Following his conviction and sentence, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, which raised the following claims:

> I. The trial court abused its discretion and deprived Defendant of a fair trial by granting the prosecutor's motion to introduce "other bad acts" evidence under Mich. R. Evid. 404(B).
>
> II. The trial court erred and deprived Defendant a potential dismissal in denying Defendant's motion to suppress the evidence on the grounds of illegal search and seizure.
>
> III. The trial court erred and violated Defendant's due process rights in denying his motion to quash the information for the reasons that: there was no evidence adduced at the preliminary examination that (1) Defendant was in possession of contraband or (2) the object described by the witness met the requirements of a firearm under the statute.
>
> IV. The trial court abused its discretion and violated Defendant's due process of law in denying Defendant's motion for resentencing based on errors in the scoring of the sentence guidelines.
>
> V. The trial court erred and violated Defendant's due process of law in denying Defendant credit for time served when imposing sentence.

The Michigan Court of Appeals denied Petitioner's application for leave "for lack of merit in the grounds presented." *People v. Putrus*, No. 280767, (Mich. Ct. App. Dec. 20, 2007). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court. In lieu of granting leave, the Michigan Supreme Court remanded this case back to the Court of Appeals to consider Petitioner's Rule 404(B) claim. *People v. Putrus*, 482 Mich. 978 (2008) (table).

On remand, the Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Putrus*, *supra*, 2009 WL 609398, at *1. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims he presented to the Michigan Court of Appeals. The Michigan Supreme Court denied the application by form order. *People v. Putrus*, 485 Mich. 1008 (2009) (table).

Petitioner thereafter filed a motion for relief from judgment in the trial court, raising the following claim:

> I. Petitioner's trial counsel was ineffective for failing to marshal the evidence necessary to show Petitioner had standing to challenge the search and seizure at 20070 Derby. Appellate counsel was also ineffective for failing to investigate the standing issue.

The trial court issued a lengthy opinion analyzing this claim on the merits and denied relief. *People v. Putrus*, No. 06-010996-01-FH, Order (Wayne County Cir. Ct. Feb. 22, 2011). Petitioner filed a motion for reconsideration, but the trial court denied this as well in another reasoned opinion that further discussed why Petitioner's claim lacked merit. *People v. Putrus*, No. 06-0109966-01-FH, Order (Wayne County Cir. Ct. Apr. 26, 2011).

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Putrus*, No. 304081, Order (Mich. Ct. App. Nov. 16, 2011). Petitioner's application for leave to appeal this decision in the Michigan Supreme Court was also denied under Rule 6.508(D). *People v. Putrus*, 491 Mich. 942 (2012) (table).

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

*Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

**A. Ineffective Assistance of Counsel**

Petitioner first claims that his trial counsel was ineffective for failing to better support his

assertion that he had a reasonable expectation of privacy in the house where the narcotics were found. This claim was presented to the trial court in Petitioner's motion for relief from judgment, and the state court rejected it on the merits. Respondent asserts that Petitioner is not entitled to relief on this claim because the state court adjudication of the claim was reasonable.

Claims of ineffective assistance of counsel are measured under the standards established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88(1984). Petitioner must prove that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced him, resulting in an unreliable or fundamentally unfair outcome. *Id*. In adjudicating the first prong of the standard, the Court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. To prevail on the second prong, Petitioner must demonstrate a "reasonable probability" that the result of the trial would have been different but for counsel's errors. *Id*. at 694.

Under *Strickland*, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The Sixth Amendment is violated only if counsel's acts or omissions "were outside the wide range of professionally competent assistance." Id. Strategic choices after thorough investigation of law and facts relevant to plausible options are "virtually unchallengeable." *Id*.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010) (citations omitted). The Supreme Court in *Harrington* confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and [section]

2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal and end citations omitted). "When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

To prove that counsel failed to litigate a Fourth Amendment claim competently, a defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375(1986); See also *Mack v. Jones*, 540 F. Supp. 2d 840, 848 (E.D. Mich. 2008).

A defendant bears the burden of establishing that his own Fourth Amendment rights were violated. *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). The two-part test requires that a defendant show (1) he had a subjective expectation of privacy in the searched premises and (2) that society is prepared to recognize that expectation as legitimate. *California v. Ciraolo*, 476 U.S. 207, 211 (1986). "[I]important factors to be considered in determining whether there was a legitimate expectation of privacy include ownership, lawful possession, or lawful control of the premises searched." *United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998). Accordingly, those who inhabit a residence wrongfully may not claim a legitimate expectation of privacy in the property. *Id* (concluding that a defendant lacks a reasonable expectation of privacy in a vacant house that he neither owns nor rents); see also *United States v. Dodds*, 946 F.2d 726 (10th Cir. 1991) (concluding that a defendant apprehended in an abandoned apartment where he sometimes slept had failed to demonstrate that he had a legitimate expectation of privacy).

At the suppression hearing held before trial, several defense witnesses testified that Petitioner

had a key to the residence in question, that he appeared to be in charge of it, and that he slept there on a few occassions. The witnesses believed that the house was owned by Sam Warda. Petitioner testified at the hearing that Warda gave him a key to the house after the tenants were evicted so that he could take care of it. He testified that he slept at the house between six and ten times in the months prior to his arrest. The trial court denied the suppression motion on the grounds that Petitioner did not demonstrate that he had standing to challenge the search, noting the absence of testimony from Warda or other evidence to convince it that Petitioner had a legitimate expectation of privacy in the house.

Petitioner claims that his counsel should have called Warda to testify that he gave permission to Petitioner to occupy and use the house, and counsel should have presented other documentary evidence to show Warda's interest in the house. But Petitioner's evidentiary proffer to the state trial court in his motion for relief from judgment amounted to documents indicating that the house was actually owned by Atheer Ibriham, that Ibriham has some relationship with Warda, and that Petitioner has some relationship with Warda. None of the documents establish that Warda or Ibriham gave permission to Petitioner to occupy the house as Petitioner claimed.

Petitioner apparently had an investigator contact Warda, and Warda told him that he could not remember if he gave Petitioner permission to occupy the house or not. Warda was apparently reluctant or unwilling to testify in Petitioner's defense. It was also established that prior to trial, Petitioner had Warda's telephone number, but did not give it to his trial attorney.

Given this record, the state court reasonably determined that counsel was not ineffective in the manner he handled the suppression motion. As to the first prong of *Strickland*, Petitioner-who has the burden of demonstrating that his counsel was constitutionally ineffective-has presented

nothing to show that counsel could have presented additional evidence to demonstrate Petitioner's interest in the hoouse. See *Worthington v. United States*, 726 F.2d 1089, 1093-94 (6th Cir. 1984). The documents he presented to the state court showed at most some sort of connection between Ibriham–the owner of the house–and Warda, and then some sort of connection between Warda and Petitioner. The documents do not demonstrate that Petitioner had permission from the owner to occupy the house. Moreover, Petitioner was unable to proffer any testimony from Warda or Ibriham that he had permission to occupy the house. All that Petitioner has to demonstrate a reasonable expectation of privacy in the house was the fact that he had a key, the testimony of three witnesses who essentially assumed he had permission to be there, and his own testimony. But this was exactly the evidence that his counsel produced at the suppression hearing. Petitioner simply has not demonstrated the existence of additional evidence that would have compelled the state courts to grant his motion to suppress.

Accordingly, the state court determination that this claim was without merit did not result in an unreasonable application of the *Strickland* standard.

**B. Illegal Search**

Petitioner's second claim asserts the underlying substantive claim that his rights under the Fourth Amendment were violated. The claim is not cognizable.

Federal habeas corpus review of a state prisoner's illegal search or seizure claim is barred "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim[.]" *Stone v. Powell*, 428 U.S. 465, 481 (1976). This is because "the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence

obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. In articulating its logic for so holding, the Supreme Court provided two explanations:

> One, the key purpose of federal habeas corpus is to free innocent prisoners. But whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty. Two, exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution. Any deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great.

*Good v. Berghuis*,   F.3d  , No. 12-1428, 2013 U.S. App. LEXIS 18578, 2013 WL 4767183, at *1 (6th Cir. Sept. 6, 2013) (slip op.) (Sutton, J.) (internal citations omitted).

Given the rule announced in *Stone*, the Court must determine whether Petitioner received "the opportunity for full and fair consideration" of his Fourth Amendment claim in the state courts. *Stone*, 428 U.S. at 486. As the United States Court of Appeals for the Sixth Circuit recently clarified, the *Stone* "'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good,* 2013 U.S. App. LEXIS 18578, [WL] at *2. Stated differently, the state must provide, in the abstract, a mechanism by which a petitioner could raise a Fourth Amendment claim, and the presentation of that claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).

The opportunity to litigate, for purposes of *Stone v. Powell*, encompasses more than an evidentiary hearing in the trial court. It also includes corrective action available through the appellate process on direct review of the conviction. See *Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012) (petitioner had ample opportunities in state court to present Fourth Amendment claims, thus precluding federal habeas relief based on the state court's failure to apply the exclusionary rule; trial court rejected defendant's Fourth Amendment claims on forfeiture grounds because his attorney

-11-

did not show up at a hearing designed to consider them, and a state appellate court rejected his claims on the merits); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004) (petitioner's Fourth Amendment claim was not cognizable on habeas review, even though the petitioner did not challenge the legality of his arrest prior to trial, where the petitioner first raised the issue in a post-trial motion and then on direct appeal and was denied relief).

"In the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Good*, No. 12-1428, 2013 U.S. App. LEXIS 18578, 2013 WL 4767183, at *2. Thus, the relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *Brown v. Berghuis*, 638 F. Supp. 2d 795, 812 (E.D. Mich. 2009).

In the instant case, Petitioner raised his Fourth Amendment claim before the state trial court and the Michigan appellate courts. Moreover, all material facts were before the state courts on state collateral review. Because Petitioner was afforded a full and fair opportunity — an opportunity he seized — to present his case regarding the validity of the search of the house, *Stone* precludes this Court's consideration of his Fourth Amendment claim and Petitioner is not entitled to habeas relief on this basis.

**C. Sentencing Guidelines**

Petitioner's third claim concerns the scoring of his sentencing guidelines. Petitioner asserts

that the trial court erroneously scored a sentencing variable concerning carrying out an ongoing criminal enterprise, and he argues that the trial court erroneously considered evidence that he attempted to hide the drugs as allowing the court to score points for interfering with the administration of justice. The claim is not cognziable.

A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. See *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. See *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. See *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); see also, *Branan*, 861 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of the Michigan sentencing guidelines.

**D. Prior Bad Acts Evidence**

Petitioner's final claim asserts that the trial court erroneously ruled that his prior narcotics conviction would be admissible at trial under Michigan Rule of Evidence 404(b). Petitioner's plea

bargain was conditioned on him being allowed to raise this issue on appeal. Setting aside that fact, that the agreement did not state that the claim would be preserved for habeas review, the claim must be denied because it too is not cognizable.

A claim that a state court erred in admitting evidence under Rule M.R.E. 404(b) is non-cognizable on habeas review. See *Bey v. Bagley*, 500 F 3d 514, 519 (6th Cir. 2007); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. See *Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003); See also *Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by the admission of evidence to establish the petitioner's propensity to commit criminal acts, the Michigan Court of Appeals' rejection of Petitioner's character evidence claim was not an unreasonable application of clearly established federal law. See *Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Carey v. Musladin*, 549 U.S. 70, 77 (2006). Petitioner is not entitled to habeas relief on this claim.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.

s/John Corbett O'Meara
United States District Judge

Date:  November 20, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, November 20, 2013, using the ECF system.

<pre>                              s/William Barkholz
                              Case Manager</pre>